UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| NED L. PRICE and SUSAN M. PRICE, ) <br> ) <br> Plaintiffs ) <br> ) <br> vs. ) <br> ) <br> BIOMET, INC., and BIOMET ) <br> ORTHOPEDICS, LLC, ) <br> ) <br> Defendants ) | CAUSE NO. 3:14-cv-275-RLM-CAN <br> Part of 3:12-md-2391-RLM |

OPINION AND ORDER

Plaintiffs Ned and Susan Price have asked for a suggestion of remand of their case to the Middle District of Florida. Theirs is one of seven cases remaining in this MDL docket involving Biomet's M2a-Taper hip implants instead of the M2a-Magnum and M2a-38 implants. The PSC II supports the Prices' motion, and Biomet opposes it.

This docket originally was created only for the Biomet M2a-Magnum and M2a-38 implants. In April 2013, the Judicial Panel on Multidistrict Litigation expanded the docket to include the M2a-Taper, adding its customary caveat that the transferee judge is free to employ separate tracks for the different devices, or even make a suggestion of remand. The Panel transferred the Prices' case to this docket in April 2014, in the midst of a settlement process that resolved the bulk of the cases in the docket. The Prices' case didn't settle. Because the settlements took most of the original Plaintiffs' Steering Committee out of the litigation, I appointed a second steering committee. That second committee — PSC II —

reports that it doesn't plan to do any discovery specific to the M2a-Taper, leading the Prices to ask to go home.

Because they seek remand before the conclusion of pretrial proceedings, the Prices bear the burden of showing that remand is warranted. *See* In re Maxim Integrated Products, Inc., MDL No. 2354, No. 12-244, 2015 WL 1757779, at *3 (W.D. Pa. Apr. 17, 2015) (noting that "because pretrial proceedings have not concluded, [the movant] has the burden to demonstrate good cause to secure remand of its case"); In re S. Cent. States Bakery Products Antitrust Litig., 462 F. Supp. 388, 390 (Jud. Pan. Mult. Lit. 1978) (holding that the JPML "will remand an action or actions prior to the completion of coordinated or consolidated pretrial proceedings only upon a showing of good cause," and declining to remand because movant "failed to make any such showing.").

In deciding whether to suggest remand, I apply the same standards for remand the Panel would apply. *See* In re Bridgestone/Firestone, Inc., 128 F. Supp. 2d 1196, 1197 (S.D. Ind. 2001). Generally, I must ask "whether the case will benefit from further coordinated proceedings as part of the MDL." In re Ins. Brokerage Antitrust Litig., Civ. Nos. 04–5184, 05–5696, 2009 WL 530965, at *2 (D.N.J. March 3, 2009) (citing In re Bridgestone/Firestone, Inc., 128 F. Supp. at 1197). The purpose of pretrial consolidation or coordination is "for the convenience of the parties and witnesses and [to] promote the just and efficient conduct of such actions," 28 U.S.C. § 1407(a), so "the decision of whether to suggest remand should be guided in large part by whether one option is more

likely to insure the maximum efficiency for all parties and the judiciary." United States ex rel. Hockett, 498 F. Supp. 2d at 38 (internal citations omitted).

The Prices might be right that suggestion of remand will be appropriate in M2a-Taper cases before the others in this docket, but their case — like the other M2a-Taper cases — continues to benefit from further coordinated proceedings as part of MDL-2391.

Clear differences exist between the M2a-Taper and the other implants. The M2a-Taper uses titanium for its acetabular shell; the shells on the M2a-Magnum and M2a-38 implants are made of cobalt-chronium. The M2a-Taper has a smaller head, among various other technical differences. It seems likely that discovery related to the design and manufacturing of the implants – and any defects therein – will be mostly different. And the M2a-Taper was designed years before the other implants were, so the relevant "state of the art" might vary.

But the Prices' argument that "everything that remains to be done in the instant case is specific to M2a Taper cases, and has no bearing on M2a Magnum or M2a 38 cases" isn't quite right. Much of what remains to be done in this and the other M2a-Taper cases overlaps substantially with what must be done in the Magnum and M2a-38 cases. Remand isn't appropriate if continued consolidation will "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." In re Silica Prods. Liability Litig., 398 F. Supp. 2d 563, 668 (S.D. Tex. 2005) (citing In re Heritage Bonds Litig., 217 F. Supp. 2d 1369, 1370 (Jud. Pan. Mult. Lit. 2002)).

3

Continued consolidation achieves all of these objectives.

At least some of the general discovery relevant to the Magnum and M2a-38 cases will be relevant to the M2a-Taper cases. Because so little actual discovery has happened in the MDL thus far, this analysis hasn't materially changed since the Panel included the M2a-Taper cases. General discovery related to the medical issues presented by metal-on-metal implants will apply no matter the implant type, including expert testimony on the causes and effects of metallosis, the risk factors for implant failure, and corrosion/degradation of the metal in implants generally. While the M2a-Taper was designed earlier, the other two implants were designed as refinements based on it, so it seems likely that there will be at least some overlap in design considerations and "state of the art" evidence. The parties haven't said whether the marketing/promotion and sales practices differed by implant types, but if Biomet representatives promoted all three implant products to doctors or patients similarly, there will be even more overlap there.

Continued consolidation also prevents inconsistent pretrial rulings. The legal issues that dominate the court's most recent scheduling order – statute of limitations and spoliation – don't distinguish between the implant types. As discussed at the last status conference, Biomet only intends to raise a spoliation defense for plaintiffs who had a revision surgery after my preservation order. The legal issue presented on a spoliation-related summary judgment motion will be whether a plaintiff violated an order of this court, and this court is the best forum for deciding that question. Were the Prices' case remanded before I resolve the

spoliation issues, a transferor judge with limited knowledge of the MDL's history would decide whether failure to preserve an implant violated my orders at the same time I confront that question.

Biomet doesn't agree that M2a-Taper cases will necessarily be left out when PSC-II begins conducting general discovery. The Panel's transfer order explicitly recognized that different pretrial techniques – such as separate motion and discovery tracks – might be needed to make sure M2a-Taper cases weren't left out. These tools remain available, and might be a less drastic solution than remand. Other options include appointing the Prices' counsel (or another attorney who only has M2a-Taper clients) to the PSC-II to ensure that the Taper plaintiffs' interests are adequately represented. All of that remains for future consideration.

A suggestion of remand for all M2a-Taper cases would impact the six unidentified remaining M2a-Taper plaintiffs who didn't join in this motion. The Prices' is the only M2a-Taper case in which a suggestion of remand has been requested based on the differences between the implant types. Suggesting remand of all M2a-Taper cases without giving the other six plaintiffs notice or an opportunity to be heard would fall short of the standard of fairness this docket aspires to.

Although I will deny the motion for suggestion of remand for the reasons discussed so far, I need to address an additional argument the PSC II raised, lest it arise again. The PSC II argued that because Biomet opposed inclusion of the M2a-Taper cases when the issue was before the Panel, Biomet is judicially

estopped from arguing that any M2a-Taper cases should remain here.

Judicial estoppel isn't a rigidly codified doctrine, but rather "a matter of equitable judgment and discretion" courts exercise to prevent a litigant from successfully arguing two inconsistent positions in different legal actions. *See* In re Knight-Celotex, LLC, 695 F.3d 714, 721 (7th Cir. 2012). The doctrine is "intended to prevent the perversion of the judicial process" and typically applies only when "intentional self-contradiction is being used as a means of obtaining unfair advantage" by a litigant. Matter of Cassidy, 892 F.2d 637, 641 (7th Cir. 1990) (quoting Scarano v. Central R. Co., 203 F.2d 510, 513 (3d Cir. 1953). The Supreme Court has noted that judicial estoppel is "not reducible to any general formulation of principle," but that certain factors "typically inform the decision whether to apply the doctrine in a particular case." New Hampshire v. Maine, 532 U.S. 742, 750 (2001) (internal quotation omitted). These conditions include: (1) that a party's later position must be clearly inconsistent with a position it took earlier; (2) that the party asserted the earlier position successfully in an earlier proceeding; and (3) that the party seeking to assert the inconsistent position would derive some unfair advantage from doing so. *See* id. at 750-751.

None of the Supreme Court's three suggested conditions apply to Biomet. The position that consolidation of the M2a-Taper cases would be inappropriate at the outset of the MDL isn't clearly inconsistent with its position that remand is inappropriate now, after the parties have spent years litigating these cases and the transferee court has gained experience with and understanding of the issues

presented. Biomet could quite reasonably have thought that the M2a-Taper cases didn't belong here initially, but also that it would be inefficient to send them back halfway through. Perhaps more importantly, Biomet was unsuccessful in opposing consolidation of the M2a-Taper cases before the Panel. The idea behind judicial estoppel is to "protect[] the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories." <u>Grochocinski v. Mayer Brown Rowe & Maw, LLP</u>, 719 F.3d 785, 795 (7th Cir. 2013). There's no danger here of Biomet prevailing twice; it lost when arguing against consolidation the first time around. Finally, PSC II doesn't identify any way Biomet would gain an advantage – unfair or otherwise – by switching its position on the propriety of including M2a-Taper cases in the MDL docket. Instead, PSC II's argument focuses entirely on its own cost of having to oversee discovery of only seven cases rather than any advantage to Biomet.

Regardless of whether a suggestion of remand of the M2a-Taper cases might be appropriate later, the time for suggestion of remand of the M2a-Taper cases hasn't arrived. The Prices' motion for a suggestion of remand (doc. 74) is DENIED.

SO ORDERED.

ENTERED:     February 8, 2016


                            /s/ Robert L. Miller, Jr.
                        Robert L. Miller, Jr., Judge
                        United States District Court